Railia v. Cook County Elections Board Good morning, your honors. My name is Pat Quinn. I represent Andrea Raila. She was a candidate for Cook County Assessor in the Democratic primary of March 20th of 2018. Her name was put on the ballot on March 14th of 2018. She appealed to the Illinois Appellate Court, which ordered the Cook County Clerk and the Chicago Board of Election Commissioners to put her name on the ballot and do everything necessary to allow her candidacy to receive votes. What happened after that, and after March 14th, after the court ordered both the County Clerk and the Board of Elections, was a series of election shenanigans that Cook County, I don't think, has ever seen. Everything that was ordered by the court was not done by the County Clerk, who was supporting a different candidate, nor was it done by the Chicago Board of Election Commissioners. The Board of Election Commissioners sent out advertisements saying, you are not allowed to vote for Andrea Raila. She won't be on the ballot. These are newspaper advertisements. They refused to do anything about rectifying that once the court ordered. With respect to the county... That's not true. The board issued essentially a retraction of that. And also instructions to distribute a different notice, withdrew the so-called green notice that had the warning before the court ruled that votes for your client wouldn't count, and then issued another round of notices, and that somehow got screwed up in implementation. What happened is both election authorities, the city and the county, disseminated to the election day the wrong information, Your Honor. Right. They screwed up. Okay, that is one example. The County Clerk, who was supporting a different candidate, had a website which he advertises to tell voters to go to his website to learn about the candidates. After March 14th, after the Illinois Appellate Court ordered him to remedy the situation, he kept on his website that votes for Andrea Raila would not count. In addition, the County Clerk did not have the opportunity to remove the wrong notices from the various election capsules that are given to each and every precinct. They refused to do that. Matter of fact, what they did is they prepared in plain manila envelope, without any kind of instructions, the proper notices. The County Clerk himself, before the election, agreed that he should have removed those green notices, the wrong notices, and said that they would rectify that the very next morning, election day. That was not done. And the issue before the court here, we have laid out on pages 18 and 19 of the Plaintiff's Brief, not just these examples, but example after example of shenanigans. Can I clarify something, please? Your underlying suit sought both injunctive relief and damages, and the injunction was in the form of an impartial monitor to oversee future elections. Are you appealing the District Court's ruling as to both of those damages that you're seeking? With respect to the District Court, we are appealing the motion to dismiss because Andrea Rayla's First Amendment rights were violated by these... Which would include your claim for injunctive relief. Are you appealing that? Yes. How do we have jurisdiction over the injunction, which is seeking something for future harm that she hasn't suffered yet, and you have to show that the threat of injury is both real and imminent and not hypothetical? And it seems to me, she hasn't even said she's gonna run again. In fact, I don't know how that would be anything but just hypothetical. The reason, with respect to the issue, the injunction was designed to try to get some sort of oversight. I understand. I certainly understand the purpose of it. I just don't know how we have jurisdiction to hear it, given that it seems the actual harm to her seems very hypothetical for future elections. I think the key issue here is there is no accountability, even after this fiasco, this election fiasco. Let's assume all of that is true. She hasn't indicated she's gonna run again. How would there... If she never runs again, she's never gonna face any of this harm. Abstracting or moving away from just the injunction issue, we withdraw that, and we're focusing only on the issue of plausibility. Did she recite in her facts on 18 and 19, the pages, over and over again, the deliberate conduct of both the city and the county with respect to conducting this election, the standard under Ipwal and Twombly is plausibility, not probability. And that's where the district court made its mistake. The district court used an adage called Hanlon's Razor with respect to how to decide this case. I happen to have gone to the same high school as a district court judge. Matter of fact, I had a study about this Hanlon's Razor. And if you read Hanlon's Razor, it says, you should not infer malice from conduct that can be adequately attributed to incompetence. That's what Hanlon's Razor is, and that's what the judge seemed to rely on a great deal. That's not the pleading standard, Your Honor. The pleading standard... Mr. Quinn, your pleadings, if I'm reading them correctly, and please correct me if I'm wrong, you are suing all of the individuals here in their official capacities only. Is that correct? That's correct. So nobody in his or her individual only in official capacities, it would essentially be a Monell claim. Well, that was not raised at all by the... Well, I'm asking you because my reading of the pleadings... They're official capacities. One second, please. I just want to make sure we're on the same page. My reading of the complaint and whether or not it's plausibly states a claim here is that this is seeking Monell liability only because it's only suing the individuals in their official capacities. Would you agree with that, or is there something in the complaint that you're seeking other than official capacity? No, official capacity, that's why it satisfies Monell, even though Monell was not raised... So then, where in your complaint, since it's just Monell, where in your complaint do you allege a specific policy, widespread practice, or allegation by a person with final decision-making is the one... Where do you even identify that to begin with? Because under Monell, you have to identify one of those for the city to be responsible. Well, both the city election commissioners and the county clerk, they are the official people who have the authority over the election, and they're the ones... By the way, if you read the district court opinion, it talks a lot about the people who didn't do anything wrong. The higher-ups, who are full-time professionals, highly paid, have a duty to conduct an honest and fair election. They're the ones over and over again who had all these shenanigans occur. Matter of fact, with respect to the replacement of the wrong notices with the right notices, that never happened. That didn't happen even until Election Day, and even after Election Day. The fact that they're apologizing for all of this, the bottom line is, if you look at the cases, election cases that have come from Cook County in this district, the bottom line is a motion to dismiss. That's what we're talking about here today. The standard is plausibility. Is there anything in the allegations about shenanigans by plaintiff Rayla, anything that's plausible with respect to the conduct, the mosaic here, you tie together all of the events that happened, all of the shenanigans that happened, that shows enough to survive a motion to dismiss. Now, the cases cited by the defense, by the way, all of those were not cases decided on motion to dismiss. They might have been decided on a summary judgment or some other grounds, but none of those cases were motion to dismiss cases, and that's why it's so important that this 1983 civil rights action is the only accountability these election authorities will have with respect to their conduct, their willful conduct. What allegations, what are your best allegations in the complaint that would support a reasonable inference that the defendants, city and county, were trying to willfully deprive your client of ballot access? Again, Your Honor, it's mosaic, not just one, but if you tie together the fact that they over and over again, day after day before the election, failed to put in the proper notices to the voters and sent the wrong messages over and over again. That suggests negligence. It doesn't suggest a willful deprivation of her constitutional right to ballot access. Well, Your Honor, if it happens over and over again, that does show up the willfulness of the defendants not to do what the court told them to do. The Illinois Appellate Court. You're essentially arguing, if you go to those pages you were referencing in the brief, none of that could happen all in combination and just reflect a screw-up. It's got to reflect that your point is that when you have a screw-up to that degree, when you have shenanigans to that degree. Exactly, Your Honor. Plausible. And that's the point. That's the point you're making. The plaintiff is entitled to at least examine what went on here. They have no independent commission or no oversight from the legislature. It's only the appellant who is wronged here and her civil rights were wronged here. And the bottom line of this, with respect to everything, is if we're gonna allow the county and the city to just claim we're incompetent, that's what we do here. We're incompetent at running elections. That's their total defense. If that is the defense, then when it comes to civil rights of candidates and people who have their candidacies sabotaged, the election authorities are going to say, well, if we want to sabotage somebody, let's just be as incompetent as we can be and we'll get away with it. And that's essentially what happened here. The Chicago Tribune, the largest paper in our state, said the voters were cheated, the candidate was cheated here. And this is the only action, this 1983 action, is the only action to get any kind of accountability and a look into what went on there on March 20th. Why couldn't you go back to the state court and say they failed to comply with the ruling from the state appellate court, that they are violating the state court's directive? The appellant, Ms. Rayla, did appeal to the Illinois State Court with respect to everything but equal protection and the federal issues that are involved here. And so that's why we're here. Did she go back to the state court and say, you issued this order and they didn't comply with it, they're in contempt of court. Did she do that? They disobeyed those orders, no doubt about it, Your Honor. But did she appeal that to the state court is my question. Did she go back to the state court and say they are violating your direct order? She went to the state court. The grounds of appeal there, talking to the state court, were not 1983 equal protection and First Amendment grounds. That's a separate question, Mr. Quinn. I didn't see anything in the record suggesting that once the state appellate court gave its directive, that she ever went back to them and said they're in contempt of court. They have violated your order and not complied with what you said. Did she ever do that? She did, but not on the grounds we're appealing here. So she did go back and say they're in contempt of court, they're in contempt of court. I didn't see anything saying that. All right, thank you. Okay, thank you. Mr. Morris. Good morning, Your Honors. May it please the court, I am Assistant State's Attorney Patrick Morris, and I represent the appellees in this case, the Cook County officers of the Coral Board and its members, Kim Fox, Karen Yawbro, and Iris Martinez. While many arguments I'll be making today are applicable to all the defendant appellees in this case, any specific questions or arguments directed at the City Board of Commissioners and its members will be addressed by their legal counsel, Mr. Daniel Burns, who's reserved four minutes of time to argue here today. Your Honors, this court has repeatedly expressed wariness with respect to federal courts involving themselves in state and federal courts should not entangle themselves in such disputes that can and should be heard in state courts pursuant to state law. In this case, plaintiff has already litigated and exhausted nearly all the claims and issues in her Third Amendment complaint before the Circuit Court of Cook County and the First Appellate Court, and is now seeking a second fight at the apple by inappropriately and insufficiently fashioning her claims as a federal civil rights issue. In order to state an election claim in federal court under the First and Fourteenth Amendments, plaintiff must demonstrate that the defendants acted willfully, purposefully, and intentionally in denying the citizens the right to vote for the candidate they're choosing. Here, the allegations in plaintiff's Third Amendment complaint are almost entirely barred by res judicata, and any remaining allegations are insufficient to demonstrate defendants acted willfully. You keep saying, and you argued this throughout your brief, that the allegations are barred by res judicata, but res judicata impacts claims, not allegations. Correct. The claims are barred, and any opportunity to litigate those claims as well. So with respect to, for example, her claim for due process, she argued in the Appellate Court, when she first appealed the Circuit Court's ruling, to stay the decision by the Circuit Court allowing the use of green notices, mailing to absentee voters, and posters on early voting locations indicating that a vote for her would not count. The Appellate Court denied that motion for a stay, and then she subsequently, when it was remanded to the Circuit Court, filed another motion for an injunction to prevent them from utilizing those notices, and again lost. So again, she's argued... These requests advance under the same provisions of the federal constitution that are before us here? Correct. So as the District Court noted in her motion before the Appellate Court, she argued that her due process rights were being violated by them being allowed to use those notices, which is important to note also at the time that when that motion to stay was denied in front of the Appellate Court, the Circuit Court had ruled in favor of the County Board and determined that those notices should, it can and should be mailed. In fact, at that time, Raylia was not a candidate that was eligible to be voted for, so they were absolutely required under the law to advise voters of that right. So in essence, based on the claims precluded under racist judicata, the only allegations in plaintiff's complaint that are operable are any conduct that occurred from March of 2014, when the Appellate Court issued its ruling, and March 21st of 2018, when the primary election went underway. If you look at the actions though, that were done by the parties, and I think it's important to note that we need to, we need to disentangle the allegations. Throughout her brief and today, plaintiff continues to allude to defendants, defendants, defendants. Well, there are six different defendants representing six different agencies, and so she has to allege individual claims against each one of them in order to meet her pleading standard. Do you agree that there are only Monell claims here, because it's only in official capacity? Correct, Judge. So again, with respect to the Monell claims, if this, in order for plaintiff to state a cognizable claim, she has to identify who the policymaker was, and what the decision was, and why that reflects willful conduct to violate her constitutional rights. In the complaint, there is no separation of allegations against any of the individual defendants indicating that such conduct occurred. And if you look at specifically her allegations against the County Board, for example, essentially what plaintiff is alleging is that they decided to use black and white notices, indicating, that did not indicate a vote for Raleigh would not count, as opposed to the previously printed green notices. Essentially, Miss Raleigh wanted brighter colored paper on those second notices and didn't get it. She also alleges that they did not remove the green voter notices from the election boxes, and that they not, they could have taken greater measures to advise the election judges on what notices to use. But as the District Court noted, all of those allegations are undercut by two things. Number one, the circumstances of this election, and in this ruling. The County Clerk had six days in order to fashion a remedy pursuant to the Appellate Court's order. Six days in an election that involved not just the Cook County Assessor, but also the Treasurer, the County Clerk, the President Board, several commissioners, and we're in the third largest jurisdiction in the entire United States. You're talking about millions of voters in which you have to oversee and hundreds of election judges and volunteers. In that context, even in that context, the District Court also noted that the County Clerk did take several affirmative actions pursuant to the Appellate Court's order to ensure that votes for Raleigh would be counted. They printed out these black and white notices. They placed them in the election boxes. They directly advised election judges on which notices to use, and also reached out to Raleigh's campaign, indicating that they were sending emails to these judges. Given the context and little time that they had to pursue these actions in such a large election, one cannot reasonably infer that this was willful conduct on behalf of the County Board or the County Clerk or any of its members. I see I'm out of time unless there's any questions. All right, thank you. Mr. Burns. Good morning. May it please the Court. Daniel Burns on behalf of the Chicago Board of Election Commissioners and its members. Beyond Plaintiff's failure to plausibly allege willfulness, she also sees hand-on federal court involvement in state and local election matters. Plaintiff's allegation invites the federal courts to micromanage state and local election matters and to oversee compliance with state court mandates and orders, a position that is contrary to well-established law in the circuit. In light of Plaintiff's allegations, the federal courts will be concerned with whether green paper should be used, whether black paper should be used, whether white paper should be used. Federal courts would also... I don't know that that, I mean, I don't know that that's fair to her position. I don't, I don't think she's talking about the color of paper. I think she's talking about the preventing, as Mr. Quinn advances, you know, these shenanigans from occurring. Respectfully, Your Honor, I disagree. Because he's asking, he, what she's asked for is a monitor to ensure the integrity of the election process. That's what she asked. Now, she may not be entitled to it legally. There may be a legal problem, but it's not about the color of paper. Respectfully, I disagree, Your Honor. The plaintiff does argue that the new notices were, quote, printed in black and white and did not stand out like the green cards. So ultimately, it's part of the mosaic that Mr. Quinn mentioned. But that's not what she's asking for going forward. She's using that as evidence of willfulness here. She's not saying as part of an injunction going forward, you should have these different types of paper or colors of paper. Well, if the federal, well, if this court allows these allegations to go forward past the pleading stage, the court will be considered whether or not that is willfulness, whether green paper used versus black. It has nothing to do with green paper, with all respect. I mean, you might prevail, but you can't argue on that ground. I'm looking right at the Third Amendment complaint. And it says, requesting an injunction should issue requiring the appointment of an impartial monitor to oversee elections in Cook County, et cetera, until the defendants can adequately establish their ability to conduct free and fair elections. Now, you might say there's a tremendous problem with that under Los Angeles versus Lyons and other Supreme Court precedent. But in fairness to what your adversary is arguing, it has nothing to do with the color of the paper. I just read from the complaint. Yes, Your Honor. I will also like to point out, though, that if plaintiff had these allegations, which she claims, or Mr. Quinn claims are shenanigans, she did have a remedy in state court under state court procedures where she could have filed an election contest. She did not do that. And now 20 months after the election, she brought a federal civil rights action, which is why we're here today. So it's not as if that she doesn't have a remedy. She had a remedy in state court to pursue those matters. And further, what she's asking is for this court now to say that the electoral boards did not obey the mandate of the Illinois appellate court, but she never did return to the Illinois courts to press that matter for them. And because she the Illinois appellate court ruled and sent the directive down, and she felt that they were not in compliance with that order, did she have a remedy to go back to state court then? Sure. Absolutely. For violation of the state court order, the courts have their inherent authority to manage and make sure their mandates are followed. So yes, she did. Unless there's any other questions. There was nothing that did happen right after the appellate court. No kind of request for emergency relief. I believe she did. She did go back to the circuit court for remedial relief measures, and that was denied. But she did not. Not the appellate court? Not the appellate court. Okay. All right. Thank you. Thank you. Thank you very much. Mr. Quinn, your time had expired. I think we have your argument. The case is taken under advisement, and we'll move on.